UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 20-23267-B-7 |
| | ) |
| **SHON JASON TREANOR and** | ) Date:  June 9, 2026 |
| **JILL DIANA TREANOR,** | ) Time:  1:30 p.m. |
| | ) Place: U.S. Courthouse |
| Debtors. | )        2500 Tulare Street |
| | )        Courtroom 13, Fifth Floor |
| | )        Fresno, California |
| | ) |
| | ) Honorable René Lastreto II |

**RULING ON SHON TREANOR'S PETITION TO SUBMIT DIRECT
EVIDENCE OF ALLEGED FRAUD AND OTHER CRIMES DIRECTLY TO
THE U.S. ATTORNEY AND OTHER LAW ENFORCEMENT AGENCIES**

**INTRODUCTION**

Co-debtor Shon Treanor ("Shon" or "Treanor") petitions the court to refer Shon's evidence of alleged fraud and other crimes to the United States Attorney.  The court does not have reasonable grounds for believing that any violation of the relevant bankruptcy crime statutes has been presented.  For that and other reasons, the court denies the petition without prejudice.

**BACKGROUND**

This bankruptcy case was filed on June 30, 2020.  The debtors received their discharge on February 17, 2021, and the case was closed on December 27, 2022.  Docket generally.  At the end of the case, the trustee paid Shon and co-debtor Jill Treanor each $159,823.26.  Doc. #505.

A motion to reopen the case was filed by co-debtor Jill Treanor on January 21, 2026. Doc. #511. An order reopening the case was entered the next day. Doc. #512.

Shortly after, Jill Treanor filed a handwritten "Motion to Receive Proceeds from the Sale of My Home." Doc. #514. No further statement was filed in support of the motion.

A month and one-half later, Shon filed this "Petition to Submit Direct Evidence." Doc. #519. The hearing on both motions was originally set for April 23, 2026. The hearing has been continued a few times at the request of Jill Treanor. Both motions were then set June 9, 2026, at 1:30 p.m. by order dated May 20, 2026. Docs. #533, #534. Jill Treanor requested and received another continuance of her motion only. Doc. #539. This motion was heard June 9, 2026.

This bankruptcy case has been riddled with disagreements and allegations of fraud by the debtors. The debtors discharged counsel during the case.[1]

The alleged crimes and cover up asserted by Treanor here relate to probate estate and trust litigation in both Fresno and Solano counties, California. The relevant events began in 2014 through 2018.[2]

---

[1] This case was originally assigned to now retired Judge Sargis. Upon Judge Sargis' retirement, the case was assigned to the undersigned.

[2] Shon submitted 66 exhibits consisting of over 275 pages purporting to establish the crimes committed in connection with Probate Estates and Trust litigation. The court reviewed the documents *in camera*. Most of the documents consist of email chains between lawyers and clients, lawyers and lawyers, pleadings in the probate estates involved and reports of various agencies including Adult Protective Services for Fresno County, the Fresno Sheriff's Office, the Fresno County District Attorney, the California Attorney General, County Counsel and others. Some of the language in the correspondence is "rough." The documents also include a toxicology report which Shon says has not been previously released. This report, Shon claims, is evidence that the Bandys' deaths are suspicious. The court will attach the numerous documents as appendices to this ruling. Under 11 U.S.C. 107(b) the

2

Wayne and Mary Bandy resided in Fresno County, California, in what is now known as "Yokuts Valley." Mary Bandy died on June 8, 2014 without a will. Wayne Bandy died a little over three months later on September 21, 2014. Wayne and Mary had two children: Mark Bandy and Cheryl Lynn Bandy-Gotemiller. Mark has a son, James Bandy. Cheryl had no children. Cheryl was married to Mark Gotemiller who died in August 2013. Cheryl predeceased her parents on March 20, 2014.

Though Cheryl had no children, Mark had a niece, Jill Treanor. Shon was Jill's spouse.

The elder Bandys were cared for by Terry Novak and others. Cheryl was cared for by the Treanors until her death in March 2014.

Wayne Bandy allegedly wished to disinherit Mark. So, Wayne and Mary hired attorney Donna Standard to draft two wills sometime in mid-2014. Mary never signed her will. Wayne signed his. However, the Bandys had an existing trust since 2002.

Cheryl signed a trust shortly before her death giving the Treanors a substantial amount if not all of her assets. Cheryl resided in Solano County when she died.

Then the litigation circus began. Two separate probate proceedings for the Bandys were started in Fresno County.[3]

///

///

---

court will seal the documents from public view subject to further court order to unseal the documents for good cause. That order only affects public viewing of the documents on the docket. The order does not prevent the Treanors from using their own copies as they wish.

[3] Just prior to her death, a proceeding to appoint a public administrator as Mary Bandy's conservator began in Fresno County. That proceeding turned into a probate proceeding after Mary's death.

The Treanors contended that Wayne and Mary were subject to undue influence when they were presented with the new wills. The Treanors started a proceeding in the Solano County Superior Court to confirm Cheryl's trust which was opposed by Terry Novak who was appointed executrix under Wayne Bandy's will. Terry was represented by Donna Standard.

The Treanors were dissatisfied with the manner in which the probates in Fresno County were handled. They sincerely believed that criminal activity was involved not only in the drafting and presentation of the wills to the Bandys shortly before their death but also in the very care given to the Bandys. Equally disturbing allegations were made against the Treanors concerning their alleged undue influence over Cheryl when her trust was prepared.

The Treanors sought an investigation by the Fresno County Sheriff's Office into the Bandys' death and alleged undue influence. They were dissatisfied with the result of that investigation. They went to other law enforcement agencies including the Internal Affairs Division of the Fresno County Sherrif's Office without success. They submitted evidence to the Fresno County District Attorney's Office who declined to prosecute finding that there was not enough evidence to establish proof beyond a reasonable doubt of any criminal activity. The Treanors asked the California Attorney General to review that decision. The Attorney General determined that the District Attorney did not abuse its discretion in declining to prosecute. The Treanors had sought an investigation by the United States Attorney. They have been frustrated there as well. Shon has

4

repeatedly stated an assistant U.S. Attorney needs a court referral before looking into the case.

It is not entirely clear from a review of the documents by the court *in camera*, but it appears that the two probate estates in Fresno County and the claims involved were settled between Mark Bandy and Terry Novak. Litigation in Solano County continued through trial. The Treanors apparently prevailed in that trial. However, it is unclear what, if anything, the Treanors received as a result of their trial victory.[4]

During their bankruptcy case, the Treanors filed a motion for a U.S. Attorney General criminal investigation into fraud. See Docket Control Number SJT-2. Judge Sargis issued two orders on that motion. First he set a hearing and invited counsel involved including an Assistant United States Attorney, to participate. Doc. #299. The hearing was on June 17, 2021, and the court issued a ruling denying the motion/application without prejudice. Doc. #306.[5]

Shon now asks the court to look again at his evidence and some new evidence he claims supports an inference of criminal activity surrounding the Bandys' death. He ultimately asks again for the court to refer the matter to the U.S. Attorney.[6]

///

[4] See Complaint in Adversary Proceeding 20-2160, *Sanders, et al. v. Treanor, et al.*

[5] Many of the documents the court reviewed *in camera* were part of the record of the motion SJT-2. *See* Docs. ##252-279. One of the attorneys representing Mark Bandy in the probate litigation filed a declaration setting forth his version of the events. Doc. #290.

[6] By summarizing the lengthy disputes in all the litigation matters, the court does not intend to minimize the impact of all of this on the Treanors or any other participant in the litigation. The court set forth the pertinent facts and did not include much detail and many names since the court construes Shon Treanor's request for a referral, not to decide issues that have already either been settled by the parties or tried by the appropriate state court.

5

JURISDICTION

Jurisdiction is founded on 28 U.S.C. § 1334(b) and 157(a). This is a matter that this court may finally determine under 28 U.S.C. 157(b)(2)(A) and 18 U.S.C. § 3057.

**ANALYSIS**

I.  The Controlling Statute Limits the Matters This Court Must Refer.

18 U.S.C. § 3057 provides, in part, as follows:

> (a)  Any judge…having reasonable grounds for believing that any violation under [the bankruptcy crime statutes] or other laws of the United States relating to insolvent debtors…has been committed or that an investigation should be had in connection therewith, shall report to the appropriate United States Attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed.  Where one of such officers has made such report, the others need not do so.
>
> (b)  The United States Attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

Notably absent from that statute is any provision saying the court shall report upon the application or motion of a debtor or any other individual.  Further, the decision whether to proceed with a prosecution is made only by the United States Attorney if it appears probable that an offense has been committed.  The

6

Attorney General has the ultimate discretion to proceed to prosecution.  This court does not.

A debtor cannot require a court to refer matters for criminal prosecution.  *Mays v. CitiBank, N.A.*, 04-20227-CIV-Lenard/Simonton; 2005 U.S. Dist. LEXIS 46358*10 (S.D. Fla. 2005) *aff'd* 180 Fed. Appx. 143 (11th Circuit, 2006); *Virginia Hospital Center Arlington Health Systems v. Akl (In re Akl)*, 2010 Bankruptcy LEXIS 1338, (Bankr. D.C. April 23, 2010).  A judge may report certain conduct to the United States Attorney, but the court has no authority to determine whether a prosecution should occur.  *Gibbs v. Nationstar Mortgage, LLC (In re Gibbs)*, 19-54809; 2022 Bankruptcy LEXIS 579*17 (Bankr. N.D. Ga. March 4, 2022).

So, the question is not whether the court must refer the matter based upon a debtor or any party's request.  The answer is no.  The real question is whether this court was presented with reasonable grounds for belief that a bankruptcy crime has been committed.  Those grounds do not exist here.

II.  This court Does Not Have Reasonable Grounds to Believe a Bankruptcy Crime Has Occurred.

The bankruptcy crimes referenced in 18 U.S.C. § 3057 do not relate to probate or trust proceedings predating a bankruptcy case by more than six years.  For example, 18 U.S.C. § 152 makes it a crime for a person to "knowingly and fraudulently":

- Conceal from an official property belonging to the estate;

- Present a false oath in relation to any case;

7

- Presents a false claim;

- Receives material property after a bankruptcy filing and conceals same;

- Commits bribery for acting or not acting in a bankruptcy case;

- With intent to defeat provisions of Title 11, conceals any of its property or as an agent of a corporation;

- Falsifies books in contemplation of filing or thereafter relating to property or the financial affairs of a debtor;

- After filing of the bankruptcy withholds from an officer of the court any recorded information relating to property or the financial affairs of a debtor.

The court has paraphrased the proscribed activity. However, alleged conspiratorial acts of fraud or other crimes relating to probate or trust proceedings are not bankruptcy crimes. They did not affect this bankruptcy case. As another example, 18 U.S.C. § 153 proscribes embezzlement from the estate by an officer of the bankruptcy court. 18 U.S.C. § 154 proscribes an adverse interest by an officer of the bankruptcy court. 18 U.S.C. § 157 proscribes devising a scheme or artifice to defraud and filing a fraudulent petition; filing a document to deceive; makeing a false or fraudulent representation, claim or promise concerning or in relation to a proceeding under Title 11 before or after filing or in relation to a proceeding falsely asserted to be pending. None of those crimes are even remotely related to the alleged actions at issue here.

There is simply no reasonable grounds for this court to refer the matter to the U.S. Attorney or another prosecutorial agency. There is no reasonable grounds for belief that a bankruptcy crime has been committed. *Gibbs.* Section 3057 is not

8

a general crime referral statute.[7] It is specific to bankruptcy crimes and crimes relating to insolvent debtors.

III. The Debtors Have No Standing to Request Such a Referral.

As mentioned above, 18 U.S.C. § 3057 does not confer standing on litigants to request such a referral from the bankruptcy court. *In re Baroni*, 643 B.R. 253, 273 (Bankr. C.D. Cal. 2022). The text of the statute speaks only to the obligation of a judge (or others not relevant here) to make a referral if there are reasonable grounds for believing that a criminal violation has occurred. It says nothing about the making of a referral upon request of a party in interest. *Id.* The statute expresses no intent by Congress to authorize any party litigant to request let alone require a court or other officer of the bankruptcy estate to report anything.

IV. Other Reasons Why a Referral is not Mandated Here.

There are other reasons why a referral is not required here. First, it is unnecessary. All persons already have the unfettered right to report potential bankruptcy crimes or other crimes for investigation directly to the United States Attorney. *Baroni* 643 B.R. at 275; *In re Valentine*, 386, 387-88 (Bankr. E.D. Mich. 1996). Shon or Jill can report crimes to the appropriate agency.

///

---

[7] See, *In re Canoe Mfg. Co.*, 466 B.R. 251, 263 (Bankr. E.D. Pa. 2012); *McKnew v. Wilson (In re Wilson)*, 2015 Bankr. LEXIS 2205 *11 (Bankr. C.D. Cal. July 2, 2015); *Gibbs* at *17-18. Under 28 U.S.C. § 586(a)(3)(F), the United States Trustee has a broader reporting duty.

9

Second, the Ninth Circuit Bankruptcy Appellate Panel has held that a creditor has no due process rights to or an opportunity to be heard before a criminal referral is made. *Seidel v. Durkin (In re Goodwin)* 194 B.R. 214, 223 (B.A.P. 9th 1996); *Baroni*, 643 B.R. at 275. This supports the referral process based on a reasonable ground for believing certain crimes are committed. It is the specified entities that have the duty to report. The statute does not support a motion hearing.

Third, application of 18 U.S.C. § 3057 in the manner requested here would upset the criminal investigative process. The ultimate charging body in the federal system is the Grand Jury. If 18 U.S.C. § 3057 were intended to be applied in the manner asserted by Shon here, there would be a public process as opposed to it being subject to restrictions on public disclosure as part of the Grand Jury process. Persons names and reputations could be subject to public scrutiny before the criminal process plays out. If a referral is made after a motion is presented to a bankruptcy judge and the Grand Jury decides not to indict, the damage to the reputation may very well have already occurred and be extremely difficult to reverse.[8]

Fourth, the statute of limitations for bankruptcy crimes has expired. Even if any of the acts involved here amounted to a bankruptcy crime – they do not – the statute of limitations may have run. The statute of limitations for bankruptcy crimes with the exception of concealment of assets of a debtor is five years from the offense. The actions here occurred in 2014 through

---

[8] Cal. Rules of Prof. Conduct, Rule 3.10(a) provides that a lawyer shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil dispute.

10

2018.  The statute of limitations ran in 2023 or 2024 assuming a continuing offense.  18 U.S.C. § 3284.  18 U.S.C. § 3284 provides a five year statute of limitations for concealment of assets of the debtor in a case under Title 11.  That crime, if applicable here – it is not – is considered a continuing offense until the debtor shall have been finally discharged.  The period of limitations then begins to run.  18 U.S.C. 3284.  The debtors here received their discharge on February 17, 2021.  The statute of limitations ran February 16, 2026 and expired.  As mentioned, the crimes Shon alleges occurred here do not include concealment of assets of a debtor.  Contesting the estate's rights to assets is not concealment.

This court expresses no opinion on alleged non-bankruptcy related crimes Shon contends may have occurred.

## **CONCLUSION**

This court does not doubt the Treanors' sincerity.  Indeed, they fought this fight for many years and eventually prevailed at least in the Solano County matter.  The court certainly understands how the Treanors feel that they have not been taken seriously by the various law enforcement agencies to whom they have presented their facts.  But this court's authority to refer this matter to the United States Attorney requires that this court have a reasonable ground for believing that a violation of the bankruptcy crime statutes has occurred.  For the forgoing reasons, this court does not have that belief.  Nevertheless, the court does not want to preclude the Treanors from continuing to approach law enforcement agencies should they desire to do so.

11

So, this court will deny this motion without prejudice.  A conforming order will issue.[9]

Dated: Jun 23, 2026

By the Court

René Lastreto II, Judge
United States Bankruptcy Court

---

[9] The forgoing constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. Proc. 52 (Fed. R. Bankr. Proc. 7052).  If any finding of fact is deemed a conclusion of law it is adopted as such.  If any conclusion of law is construed as a finding of fact, it is adopted as such.

12

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Shon Jason Treanor
4390 Emerald Ridge Lane
Fairfield, CA 94534

Jill Diana Treanor
2100 West Texas Street #52
Fairfield, CA 94533

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno, CA 93721